UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JESSICA and GUY MOONE, ) <br> on behalf of their minor daughter, S.M. ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CITY OF WARWICK; WARWICK ) <br> PUBLIC SCHOOLS; DAVID TESTA, ) <br> EUGENE A. NADEAU, M. TERRI ) <br> MEDEIROS, KAREN BACHUS, and ) <br> BETHANY A. FURTADO, in their ) <br> official capacities as members of the ) <br> Warwick School Committee; PHILIP ) <br> THORNTON, Superintendent, in his ) <br> official and individual capacities; ) <br> LYNN DAMBRUCH, Director of ) <br> Elementary Education, in her official ) <br> and individual capacities; JOHN ) <br> GANNNON, Principal, in his official ) <br> and individual capacities; and BRIAN ) <br> SILVA, in his official capacity as ) <br> Treasurer of the City of Warwick , ) <br> Defendants. ) <br> ) | C.A. No. 18-026-JJM-LDA |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

I. BACKGROUND[1]

Plaintiffs Jessica and Guy Moone, filed this suit on behalf of their minor daughter, S.M. ECF No. 1-1 at 2. S.M. formerly resided in Warwick, Rhode Island

---

[1] The Court recites the facts in the light most favorable to the non-movant Plaintiff.

and attended Warwick Public Schools from the 2013-14 school year until late in the 2015-16 school year. ECF No. 14 at 1-2.

As a second grader during the 2013-2014 school year, a classmate subjected S.M. to inappropriate sexual language by a classmate. ECF No. 1-1 at 5. Specifically, A.R., a second grader with developmental disabilities, sang a song about his penis to S.M. in the school lunch line. ECF No. 14 at 2. The principal called S.M.'s parents to inform them of the incident and resolved the matter to their satisfaction. *Id.* There were no further incidents between S.M. and A.R. through the rest of the 2013-14 school year and the entirety of the 2014-2015 school year. *Id.*

In March 2016, when S.M. and A.R. were both fourth graders, A.R. touched S.M. inappropriately during recess by grabbing her between the legs and on the buttocks. ECF No. 14 at 3. S.M. reported the incident to her teacher, who then reported it to the principal. *Id.* The next day, the principal held a meeting to discuss the incident with the Moones, the Director of Elementary Education, and an officer with the Warwick Police Department. *Id.* During the meeting, the school presented a safety plan to the Moones designed to keep S.M. and A.R. separated while at school. *Id.* Additionally, the school investigated the incident. *Id.* Even so, the Moones were unsatisfied by the scope of the investigation, specifically with the fact that the school did not interview A.R. ECF No. 18-1 at 4.

S.M. missed several days of school following the incident, but returned with the safety plan implemented to prevent any more interaction with A.R. ECF No.1-1 at 5. However, less than a week after S.M. returned to school, S.M. and A.R. were

2

seated near each other at a school assembly. ECF No. 14 at 3. This event was upsetting to the point that S.M. no longer felt comfortable attending the school. ECF No. 1-1 at 5. She transferred to another Warwick public school a few weeks later. *Id.* The Moones eventually moved to another town, where S.M. now attends school. *Id.* at 6.

The Moones sued the City of Warwick, Warwick Public Schools, and various city officials. *Id.* at 2. The suit alleges that Warwick Public Schools knowingly allowed a sexually hostile school environment to exist for S.M. that constituted sex discrimination in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, as well as R.I. Gen. Laws § 16-38-1.1, which prohibits sex discrimination in the state's public schools. *Id.* at 6-8. The Moones also bring claims against Warwick Public Schools, the Warwick School Committee, and its employees under 42 U.S.C. § 1983 alleging a deprivation of S.M.'s right to personal security and bodily integrity as well as a violation of her Fourteenth Amendment right to equal protection under the law. *Id.* at 8-9. The Moones also bring claims against Warwick Public Schools and the Warwick School Committee for negligent hiring and supervision of employees. *Id.* at 11.

The Defendants (collectively "Warwick") move for summary judgment on all counts. The Moones do not object to the Motion for Summary Judgment for the claims under 42 U.S.C. § 1983 as well as the claims for negligent hiring and supervision of

3

employees. ECF No. 18-1 at 14. Thus, the only claims for the Court to analyze are for sex discrimination under Title IX and R.I. Gen. Laws § 16-38-1.1.[2]

## II. STANDARD OF REVIEW

Summary judgment is granted if the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if 'the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party.'" *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996) (quoting *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349, 352 (1st Cir. 1992)). A fact is considered material if it "carries with it the potential to affect the outcome of the suit under the applicable law." *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). The Court reads the record "in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).

## III. DISCUSSION

Title IX of the Education Amendments of 1972 ("Title IX") states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

---

[2] Because plaintiffs can only bring Title IX claims against educational institutions that receive federal funds, and not against individuals such as teachers or school officials (*Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009); *Santiago v. Puerto Rico*, 655 F.3d 61, 73 (1st Cir. 2011)), the Court dismisses all claims against all individually named defendants.

Under Title IX, an educational institution receiving federal funding may be liable for damages because of student-on-student sexual harassment when the institution's "deliberate indifference 'subjects' its students to harassment." *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 644 (1999). *See also Porto v. Town of Tewksbury*, 488 F.3d 67, 72-73 (1st Cir. 2007). To establish that an institution was deliberately indifferent to student-on-student sexual harassment in a Title IX case, a plaintiff must show that

> (1) he or she was subject to "severe, pervasive, and objectively offensive" sexual harassment by a school peer;
> (2) the harassment caused the plaintiff to be deprived of educational opportunities or benefits;
> (3) the funding recipient knew of the harassment;
> (4) in its programs or activities; and
> (5) the response to the harassment was clearly unreasonable in light of the known circumstances.

*Porto*, 488 F.3d at 72-73 (quoting *Davis*, 526 U.S. at 650). The Court turns to the fifth factor without reviewing the first four because its conclusions on this resolve this motion.

In *Porto*, the First Circuit established that school systems are not liable under Title IX for all instances of student-on-student sexual harassment in their programs. 488 F.3d at 69. The plaintiffs sued on behalf of their minor child alleging the school system was deliberately indifferent to many instances of sexual harassment by a peer. *Id.* When the child was in fifth grade, the parents learned that he had been engaging in sexual activity with a peer. *Id.* at 70. Upon being informed, the parents notified the school, which developed a plan to separate the students by placing them

on different buses as well as warning teachers and staff to monitor their interactions. *Id.*

Two years later, with the separation plan in place, school officials sent the student to the guidance counselor after school officials observed three instances of inappropriate contact. *Id.* at 70-71. The guidance counselor reiterated to the school staff that the two were to be separated and closely monitored. *Id.* at 71. Yet later that school year, the students asked to be excused from class a few minutes apart and were found engaging in sexual intercourse in the bathroom shortly thereafter. *Id.* After the incident, the child did not return to school, and was instead tutored at home. *Id.* Additionally, he was hospitalized with behavioral problems, during which time he attempted suicide. *Id.* The parents later brought a Title IX claim against the Town of Tewksbury, with the jury deciding for the plaintiffs. *Id.* at 71-72. However, the First Circuit reversed and held that Tewksbury acted reasonably in its response to the sexual harassment, and so were not deliberately indifferent. *Id.* at 76.

To reach its decision in *Porto*, the First Circuit analogized the facts to a Seventh Circuit case, *Gabrielle M. v. Park Forest-Chi. Heights, Ill. Sch. Dist. 163*, 315 F.3d 817 (7th Cir. 2003). In *Gabrielle M.*, the court found that school officials' response to sexual harassment by a male student to his female peers was not clearly unreasonable. 315 F.3d at 823. After several incidents in which lesser punishments proved ineffective, the school suspended the student but eventually allowed him to return and participate in normal activities such as lunch and recess with his classmates. *Id.* at 824. However, upon his return, school officials moved the student

6

to a different class away from the plaintiff, and school officials instructed staff to keep a close eye on his interactions with other students. *Id.* This response, which eventually also included approving the student's transfer to another school, was not clearly unreasonable. *Id.* at 824-25.

In *Gabrielle M.*, the Seventh Circuit adopted the rationale for determining a "clearly unreasonable response" provided by the United States Supreme Court in *Davis*. In *Davis*, the court held that deliberate indifference "does not mean that [funding] recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action." 526 U.S. at 648. The court rejected a standard where "nothing short of expulsion of every student accused of misconduct involving sexual overtones would protect school systems from liability or damages." *Id.* Instead, the court emphasized that "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Id.*

Here, the response from Warwick was not clearly unreasonable. In the first instance of alleged sexual harassment by A.R., the inappropriate singing in the lunch line, school officials responded in a way that the Moones acknowledged was satisfactory. There were no further incidents between A.R. and S.M. for two years as well as no complaints from the Moones about Warwick's handling of the incident, suggesting it was not clearly unreasonable considering the known circumstances. Just because there was a future incident does not mean that Warwick's response to the first instance was inadequate. The Supreme Court was clear that a school's

failure to prevent all future instances of sexual harassment did not necessarily violate Title IX.

As for Warwick's response to the more recent touching, that too was not clearly unreasonable considering the known circumstances. Upon S.M. reporting the incident to her teacher, school administrators were quickly notified and a meeting with the Moones was set up by the principal for the very next day. The separation plan to prevent any more interaction between S.M. and A.R. presented to the Moones at the meeting, would not alone constitute a clearly unreasonable response. That the school did not punish A.R. as harshly as the Moones wished or conduct the investigation to their satisfaction did not constitute a clearly unreasonable response. The involvement of not just the principal in the meeting, but of other Warwick school personnel as well, showed that Warwick did take the incident seriously.

Finally, the Court should address the failure in Warwick's execution of the separation plan, which resulted in S.M. and A.R. being seated nearby at an assembly. While certainly troubling, especially so shortly after implementation, Warwick's failure to follow the plan successfully does not mean it was clearly unreasonable. A similar shortcoming by school officials was seen in *Porto*. However, even though Tewksbury's failure there resulted in a serious sexual harassment incident, the First Circuit held that it was not proof of deliberate indifference by the school. *Porto*, 488 F.3d at 76. Here, though understandably upsetting to S.M., there was no further incident of sexual harassment that resulted from Warwick's inability to keep the children separated.

On this fully developed record here, Warwick's response was not clearly unreasonable considering the known circumstances and thus Warwick cannot be found to have been deliberately indifferent to sexual harassment under Title IX.[3]

## IV. CONCLUSION

The Court finds that there are no material issues of fact in dispute and that the Defendants are entitled to judgment as a matter of law. Defendants' Motion for Summary Judgment is thus GRANTED. ECF No. 12.

IT IS SO ORDERED.

John J. McConnell, Jr.
United States District Judge

August 5, 2019

---

[3] The Plaintiffs do not distinguish their Title IX claim with their state law sex discrimination claim under R.I. Gen. Laws §16-38-1.1. (*See, e.g.,* "Defendants allowing a sexually hostile school environment to exist for Plaintiff is sex discrimination in violation of the Title IX of the 1972 Education Amendments, 20 U.S.C. §§ 1681 *et seq.*, and R. I. Gen. Laws § 16-38-1.1." ECF No. 18-1 at 8). Thus, the Court will not either.